Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KENT, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| S&P GLOBAL INC., RICHARD E. THORNBURGH, MARCO ALVERA, WILLIAM J. AMELIO, WILLIAM D. GREEN, CHARLES E. HALDEMAN, JR., STEPHANIE C. HILL, REBECCA JACOBY, MONIQUE F. LEROUX, IAN PAUL LIVINGSTON, MARIA R. MORRIS, DOUGLAS L. PETERSON, EDWARD B. RUST, JR., and KURT L. SCHMOKE, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Michael Kent ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against S&P Global Inc. ("S&P" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempt to merge S&P with IHS Markit Ltd. ("IHS Markit") through S&P's wholly owned subsidiary, Sapphire Subsidiary, Ltd. (the "Proposed Transaction").

2. On November 30, 2020, S&P announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each IHS Markit stockholder will receive 0.2838 shares of S&P common stock for each share of IHS Markit common stock they own.

3. On January 22, 2021, S&P filed a Form 424B3 Prospectus (the "Prospectus") with the SEC. The Prospectus is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) IHS Markit's and S&P's financial projections and the data and inputs underlying the financial analyses performed by Goldman, Sachs & Co. LLC ("Goldman"); and (ii) Goldman's potential conflicts of interest. Without additional information, the Prospectus is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the issuance of S&P common stock in connection with the Proposed Transaction ("Share Issuance") is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Share Issuance unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates executive offices located in this District; (ii) one or more of the defendants either resides in or maintains offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of S&P.

9. Defendant S&P is a New York corporation, with its principal executive offices located at 55 Water Street New York, New York 10041. The Company also has offices located at One California Street, 31st Floor, San Francisco, CA 94111. S&P's common stock trades on the New York Stock Exchange under the ticker symbol "SPGI."

10. Defendant Richard E. Thornburgh has served as the Company's Non-Executive Chairman since September 2020 and a director since 2011.

11. Defendant Marco Alvera has served as a director of the Company since 2017.

12. Defendant William J. Amelio has served as a director of the Company since 2019.

13. Defendant William D. Green has served as a director of the Company since 2011.

14. Defendant Charles E. Haldeman, Jr. has served as a director of the Company since September 2012.

15. Defendant Stephanie C. Hill has served as a director of the Company since 2017.

16. Defendant Rebecca Jacoby has served as a director of the Company since 2014.

17. Defendant Monique F. Leroux has served as a director of the Company since 2016.

18. Defendant Ian Paul Livingston has served as a director of the Company since September 2020.

19. Defendant Maria R. Morris has served as a director of the Company since 2016.

20. Defendant Douglas L. Peterson ("Peterson") has served as President and Chief Executive Officer of the Company since November 2013 and a director since 2013.

21. Defendant Edward B. Rust, Jr. has served as a director of the Company since 2001.

22. Defendant Kurt L. Schmoke has served as a director of the Company since 2003.

23. Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

24. Relevant non-party IHS Markit is a Bermuda corporation, with its principal executive offices located at Fourth Floor, Ropemaker Place, 25 Ropemaker Street, London, England EC2Y 9LY. IHS Markit is a world leader in critical information, analytics and solutions for major industries and markets worldwide. IHS Markit's common stock trades on the New York Stock Exchange under the ticker symbol "INFO."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company and the Proposed Transaction**

25. S&P is a leading provider of transparent and independent ratings, benchmarks, analytics and data to the capital and commodity markets worldwide. The capital markets include asset managers, investment banks, commercial banks, insurance companies, exchanges, trading firms

and issuers; and the commodity markets include producers, traders and intermediaries within energy, metals, petrochemicals and agriculture. S&P serves its global customers through a broad range of products and services available through both third-party and proprietary distribution channels.

26. On October 27, 2020, S&P announced its third quarter 2020 financial results. For the quarter, S&P reported revenue of $1.846 billion, an increase of 9% compared to the same period in 2019, adjusted net income of $689 million, a 14% increase compared to the third quarter 2019, and adjusted diluted earnings per share of $2.85, a 16% increase from the third quarter 2019. Defendant Peterson commented on the results, stating:

> S&P Global has a collection of strong and resilient businesses that continued to perform well in the current environment. The demand for our ratings, benchmarks, research, data, and analytics is greater than ever during uncertain and volatile markets. Two years ago, we established a number of growth initiatives. It is very encouraging to see so many of these investments result in new products that we have launched this year. This is particularly true with our ESG investments and the traction that our new ESG products are gaining in the marketplace.

27. On November 30, 2020, S&P and IHS Markit issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> NEW YORK and LONDON, Nov. 30, 2020 -- S&P Global (NYSE: SPGI) and IHS Markit (NYSE: INFO) today announced they have entered into a definitive merger agreement to combine in an all-stock transaction which values IHS Markit at an enterprise value of $44 billion, including $4.8 billion of net debt. The transaction brings together two world-class organizations, a unique portfolio of highly complementary assets in attractive markets and cutting-edge innovation and technology capability to accelerate growth and enhance value creation.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, each share of IHS Markit common stock will be exchanged for a fixed ratio of 0.2838 shares of S&P Global common stock. Upon completion of the transaction, current S&P Global shareholders will own approximately 67.75% of the combined company on a fully diluted basis, while IHS Markit shareholders will own approximately 32.25%.
>
> S&P Global and IHS Markit's unique and highly complementary assets will leverage cutting-edge innovation and technology capability, including Kensho and the IHS Markit Data Lake, to enhance the customer value proposition and provide the intelligence customers need to make decisions with conviction. Serving a global customer base across financial information and services, ratings, indices, commodities

and energy, and transportation and engineering, the pro forma company will provide differentiated solutions important to the workflows of many of the world's leading companies.

The transaction creates a pro forma company with increased scale, world-class products in core markets and strong joint offerings in high-growth adjacencies, including private assets, small and medium enterprises ("SME"), counterparty risk management, supply chain and trade and alternative data.  Combined, the two companies will provide comprehensive solutions across data, platforms, benchmarks and analytics in ESG, climate and energy transition.

Douglas Peterson, President and Chief Executive Officer of S&P Global, will serve as CEO of the combined company.  Lance Uggla, Chairman and Chief Executive Officer of IHS Markit, will stay on as a special advisor to the company for one year following closing.

"Through this exciting combination, we are able to better serve our markets and customers by creating new value and insights," said Mr. Peterson.  "This merger increases scale while rounding out our combined capabilities, and accelerates and amplifies our ability to deliver customers the essential intelligence needed to make decisions with conviction.  We are confident that the strengths of S&P Global and IHS Markit will enable meaningful growth and create attractive value for all stakeholders.  We have been impressed by the IHS Markit team and look forward to welcoming the talented IHS Markit employees to S&P Global."

"This transaction is a win for both IHS Markit and S&P Global as we leverage our respective strengths in information, data science, research and benchmarks," said Mr. Uggla.  "Our highly complementary products will deliver a broader set of offerings across multiple verticals for the benefit of our customers, employees and shareholders.  Our cultures are well aligned, and the combined company will provide greater career opportunities for employees.  We look forward to bringing together our teams to realize the potential of this combination."

**Strategic Rationale – Powering the Markets of the Future**

- **Greater scale and business mix**: The transaction creates a combined business with increased scale and world-class products in core market segments.  The combined company will have balanced earnings across major industry segments and a resilient portfolio, providing additional financial flexibility to pursue value-creating opportunities.
- **Creates strong offerings in high-growth adjacencies**: The combined company will be differentiated in attractive high-growth adjacencies, including ESG, climate and energy transition, private assets and SME, counterparty risk management, supply chain and trade, and alternative data, which together represent $20 billion of total addressable market, growing at least 10% annually. As part of its ongoing commitment to remain on the cutting edge of technology and innovation, the combined company will continue to deploy well above $1 billion annually on technology.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Increased customer value proposition**: The transaction brings together both companies' customer-first cultures and broadens their combined reach across client segments, workflows and use cases. The pro forma organization will serve diverse customer segments across financial services, corporates and governments with differentiated data and intelligence, including the potential to link and create novel insights from new data set combinations. S&P Global and IHS Markit's complementary product portfolios are expected to enable the combined company to serve new and expanded customer use cases in existing and new geographies.
- **Best-in-Class talent**: The combined company will benefit from two best-in-class workforces with deep expertise and strong, complementary cultures focused on serving the global needs of customers. As a single organization, the collective workforce will benefit from expanded opportunities for career development and growth.

**Financial Benefits – Strong Financial Profile and Outlook**

- **Enhanced growth profile**: The pro forma company will have 76% recurring revenue and expects to realize 6.5-8.0% annual organic revenue growth in 2022 and 2023, balanced across major industry segments.
- **Increased profitability**: The combined company will target 200 basis points of annual EBITA margin expansion.
- **Attractive synergy opportunities and earnings accretion**: The transaction is expected to be accretive to earnings by the end of the second full year post-closing. The combined company expects to deliver annual run-rate cost synergies of approximately $480 million, with approximately $390 million of those expected by the end of the second year post-closing, and $350 million in run-rate revenue synergies for an expected total run-rate EBITA impact of approximately $680 million by the end of the fifth full year after closing.
- **Maintains strong balance sheet to pursue further growth**: The combined company is expected to maintain a strong balance sheet and credit profile, with pro forma annual revenue of more than $11.6 billion. S&P Global intends to maintain a prudent and flexible capital structure and will target leverage of 2.0-2.5x EBITA, on an agency-adjusted basis.
- **Enhanced free cash flow generation to support attractive capital return**: The combined company expects to generate annual free cash flow exceeding $5 billion by 2023, with a targeted dividend payout ratio of 20-30% of adjusted diluted EPS and a targeted total capital return of at least 85% of free cash flow between dividends and share repurchases. Both companies expect to maintain their current dividend policies until the close of the transaction.

**Management and Board**

Following closing, the Company will be headquartered in New York with a substantial presence in key global markets across North America, Latin America, EMEA and Asia Pacific.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the appropriate skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The combined company's Board of Directors will include the current S&P Global Board of Directors and four directors from the IHS Markit Board. Richard Thornburgh, current Chairman of S&P Global, will serve as Chairman of the combined company.

The leadership team will comprise senior leaders from both organizations. Ewout Steenbergen, Executive Vice President and Chief Financial Officer of S&P Global, will serve as Chief Financial Officer of the combined company.

The transition and integration of the combined company will be led by executives from both S&P Global and IHS Markit. The approach to integration planning will draw from the best practices of both companies to ensure continuity for customers, employees and other stakeholders.

**Timing and Approvals**

The transaction is expected to close in the second half of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, other antitrust and regulatory approvals, and other customary closing conditions. The transaction requires the approval of shareholders of both S&P Global and IHS Markit and is not subject to any financing conditions.

**The Prospectus Misleads S&P Stockholders by Omitting Material Information**

28. On January 22, 2021, defendants filed the materially misleading and incomplete Prospectus with the SEC. Designed to convince S&P's stockholders to vote in favor of the Proposed Transaction, the Prospectus is rendered misleading by the omission of critical information concerning: (i) IHS Markit's and S&P's financial projections and the data and inputs underlying the financial analyses performed by Goldman; and (ii) Goldman's potential conflicts of interest.

***Material Omissions Concerning IHS Markit's and S&P's Financial Projections and Goldman's Financial Analyses***

29. The Prospectus omits material information regarding IHS Markit's and S&P's financial projections.

30. With respect to the "S&P Global Projections for S&P Global," "S&P Global Projections for IHS Markit," "S&P Global Projections for the Combined Company," "IHS Markit

Projections for IHS Markit," and "IHS Markit Projections for S&P Global," the Prospectus fails to disclose the line items underlying unlevered free cash flows.

31. With respect to the "S&P Global Projections for S&P Global" and "IHS Markit Projections for S&P Global," the Prospectus fails to disclose Adjusted EBITDA.

32. With respect to the "S&P Global Projections for IHS Markit," the Prospectus fails to disclose: (i) adjusted net income; and (ii) adjusted diluted EPS.

33. With respect to the "S&P Global Projections for the Combined Company," the Prospectus fails to disclose: (i) adjusted EBITDA; and (ii) adjusted net income attributable to common shareholders.

34. The Prospectus also omits material information with respect to Goldman's financial analyses.

35. The Prospectus describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, S&P's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Share Issuance.

36. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis* of S&P, *Illustrative Discounted Cash Flow Analysis* of IHS Markit and *Illustrative Pro Forma Discounted Cash Flow Analysis,* the Prospectus fails to disclose: (i) the terminal year free cash flow used in each of the analyses; (ii) how the terminal year free cash flows were calculated; (iii) Goldman's basis for using free cash flow as opposed to unlevered free cash flow to derive the terminal values; and (iv) the individual inputs and assumptions underlying the discount rates ranging from 6.0% to 6.5%, used in

each of the analyses; and (vi) the net debt figures and the number of fully diluted outstanding shares used in each of the analyses.

37. With respect to Goldman's *Illustrative Present Value of Total Future Shareholder Value Analysis* of S&P, *Illustrative Present Value of Total Future Shareholder Value Analysis* of IHS Markit and *Illustrative Pro Forma Present Value of Total Future Shareholder Value Analysis,* the Prospectus fails to disclose the adjustments for interim dividends and share repurchases utilized in the analyses.

38. Without such undisclosed information, S&P stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

39. The omission of this material information renders certain portions of the Prospectus materially misleading, including, *inter alia*, the following sections of the Prospectus: "Certain Unaudited Prospective Financial Information" and "Opinion of S&P Global's Financial Advisor."

***Material Omissions Concerning Goldman's Potential Conflicts of Interest***

40. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by Goldman.

41. The engagement letter between S&P and Goldman provides for a transaction fee of $45 million plus an additional fee of up to $7.5 million which may be payable at the sole discretion of S&P, all of which is contingent upon consummation of the merger. The Prospectus, however, fails

to disclose the parameters and criteria Goldman needs to satisfy to receive the discretionary fee and whether the Company anticipates paying Goldman the additional fee.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The omission of this material information renders certain portions of the Prospectus materially misleading, including, *inter alia*, the following section of the Prospectus: "Opinion of S&P Global's Financial Advisor."

44. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus. The Prospectus was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's and IHS Markit's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion

provided by Goldman, and Goldman's potential conflicts of interest. The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

48.  The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Share Issuance.

49.  By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.  Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

51.  Plaintiff repeats all previous allegations as if set forth in full.

52.  The Individual Defendants acted as controlling persons of S&P within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of S&P, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Share Issuance.  They were, thus, directly involved in the making of the Prospectus.

55.     In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Share Issuance.  The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, S&P's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of S&P, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Share Issuance;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 15, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd., #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*